IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Action No. 04-CV-01116-LTB-OES

JOSHUA McQUEEN, a minor,
by and through his parents, KEITH and
SHAUNA McQUEEN,

    Plaintiffs,

v.

COLORADO SPRINGS SCHOOL DISTRICT No. 11,
and various of its elected and appointed representatives in
their official capacities,

    Defendants.
_____

**MEMORANDUM OPINION AND ORDER**
_____

Babcock, C.J.

    Joshua McQueen, ("Joshua"), by and through his parents Keith and Shauna McQueen ("the McQueens"), appeal the decision of an Administrative Law Judge ("ALJ") denying their challenge to the policies of the Colorado Springs School District No. 11 ("District") and the Colorado Department of Education ("CDE") limiting the scope of Extended School Year ("ESY") services as facially violating the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* On the basis of briefs submitted by the parties, amicus briefs by the CDE and the Colorado Association of School Boards, ("CASB"), and an oral hearing February 28, 2006**,** for the reasons discussed below, the decision of the ALJ is AFFIRMED.

## I. BACKGROUND

The facts in this case are not in dispute. Joshua was born September 10, 1996 and was eight years old at the time of the filing of this case. Joshua was diagnosed as severely autistic July 11, 2000. At the time of the events relevant to this case, Joshua was a student at Midland Elementary School in the District and was receiving special education services under both the IDEA and the Colorado Exceptional Children's Act, C.R.S. §§ 22-20-101 *et seq.* (2001), (the "CECA"). These services were developed jointly by District officials and the McQueens as part of Joshua's Individualized Education Program ("IEP"), pursuant to the IDEA, 300 C.F.R. §§ 300.340 - 300.350. Joshua's IEP included ESY services. 300 C.F.R. § 300.309. There is no dispute that Joshua is entitled to ESY services.

At a meeting of Joshua's IEP team to establish goals for the 2003-2004 school year, the team proposed an ESY for the summer of 2003 designed only to maintain the seven goals and objectives from Joshua's 2002-2003 IEP that he had already achieved. The McQueens requested that the ESY focus on skills identified in the 2002-2003 IEP that Joshua had not yet achieved, as well as skills identified for the 2003-2004 IEP. The IEP team refused, asserting that District policy, based on CDE guidelines, requires that ESYs address only maintenance and retention of skills already mastered, not acquisition of new skills.

The McQueens objected to the ESY proposed by the District as not meeting Joshua's individual needs, and invoked their right to a due process hearing, pursuant to 20 U.S.C. § 1415(f). On September 22, 2003 the McQueens and the District entered into a stipulated motion before the Impartial Hearing Officer ("IHO") bifurcating the proceeding to first address the limited issue of "whether the CDE guidelines for determining ESY services and the Respondents'

(CSSD) ESY policy violate the IDEA by limiting required ESY services to maintaining learned skills rather than developing new skills." Only after this issue was addressed would the parties return to the IHO to undertake a full evidentiary hearing.

The IHO held a hearing September 23, 2003, and ruled November 20, 2003 that the District and CDE ESY policies do not conflict with the relevant provisions of the IDEA. The IHO, in his decision, noted that the McQueens offered "relevant and credible testimony" at the Hearing from Joann Gerenser, an expert on learning disabilities among autistic children, that the policy limiting ESY services to the goal of maintaining learned skills and not developing new skills "is quite possibly not appropriate for children with autism who may benefit most from a very intensive program on a year-round basis." However, the IHO found that the issue at the bifurcated hearing "was not whether the IEP as implemented during the school year or the extended school year" met the requirements of the IDEA, and was therefore "not the subject of or included in this order." The McQueens appealed the IHO decision to an ALJ, pursuant to 20 U.S.C. § 1415(g). The ALJ affirmed the IHO, concluding that based on the statute, regulations and case law, the ESY policy complied with the IDEA.

## II.  STANDARD OF REVIEW

The IDEA states that a district court shall review the decisions of an IHO or an ALJ based on a "preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(C)(iii). While this grant of authority means that reviewing courts need not consider the findings of state administrative bodies conclusive, it also is not "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Education of the Hendrick Hudson Central School District, Westchester County, v. Rowley,* 458 U.S. 176,

3

205-206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). District Courts may not "set state decisions at nought" and must give state administrative proceedings "due weight." *Id.* at 206. *See also Murray v. Montrose County School Dist.,* 51 F.3d 921, 927 (10th Cir. 1995).

However, where as here, there are no facts in dispute and the sole issue is interpreting federal law, it is unnecessary for a federal court to afford the legal conclusions of the state administrative officials "due weight." *See Muller ex rel. Muller v. Committee on Special Educ. of East Islip Union Free School District,* 145 F.3d 95, 102 (2nd Cir. 1998). I therefore consider the legal conclusions of the IH and the ALJ *de novo.*

Since the McQueens challenge the District policy on its face, my review is also governed by the formidable standard applicable to facial challenges. In a facial challenge "the challenger must establish that no set of circumstances exists under which the Act would be valid." *U.S. v. Salerno,* 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 697 (1987). Although the Tenth Circuit has applied the *Salerno* standard numerous times, *see West v Derby Unified School District No. 260,* 206 F.3d 1358, 1367 (10th Cir. 2000) and *Public Lands Council v. Babbitt,* 167 F.3d 1287, 1293 (10th Cir. 1999), the Supreme Court has, since *Salerno,* pondered whether it should be applied literally, s*ee Washington v. Glucksberg,* 521 U.S. 702, 739-740, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (Stevens, J., concurring), causing the Tenth Circuit to question whether *Salerno* remains good law. *U.S. v. Castillo,* 140 F.3d 874, 879 (10th Cir. 1998).

However, even under more lenient facial challenge standards the challenger must establish that "the invalid applications of a statute 'must not only be real but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Glucksberg,* 521 U.S. at 740. So, to invalidate the District ESY policy on its face, the McQueens must show either that the policy is in all

respects non-compliant with the IDEA, or at the very least that the applications of the policy that do not comply with the IDEA are substantial in relation to the applications that do comply with the IDEA.

### III.  STATUTORY FRAMEWORK

The overall goal of the IDEA is, in part, "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for education, employment and independent living." 20 U.S.C. § 1400(d)(1)(A). All states that receive federal funds under the IDEA must provide a "Free Appropriate Public Education" ("FAPE") to all disabled children between the ages of 3 and 21. 20 U.S.C. § 1412(a)(1)(A).The Supreme Court has held that the FAPE requirement does not mean that school districts are obliged to "maximize the potential" of each disabled child, but must provide services sufficient to "confer some educational benefit" on the disabled child. *Rowley,* 458 U.S. at 200.

A FAPE must be provided in accord with an IEP. 20 U.S.C. § 1401(9)(D). The IEP is a written plan for a disabled child's special education, developed among school officials and the child's parents, detailing the special education and related services the child needs to participate in school programs. 20 U.S.C. § 1414(d). The IEP includes "a statement of measurable annual goals, including academic and functional goals." 20 U.S.C. § 1412(d)(1)(A)(i)(II).  The IEP must be developed individually for each child. 20 U.S.C. § 1414(d)(3).

ESY services are special education and related services provided to children with a disability beyond the normal school year. 34 C.F.R. § 300.309(b)(1)(I). ESY services are necessary only if the IEP team finds, on an individual basis, that these services are necessary to

provide a FAPE. 34 C.F.R. § 300.309(a)(2). ESY services must be in accord with a child's IEP. 34 C.F.R. § 300.309(b)(1)(ii).

## IV. DISCUSSION

1. Does the ESY Policy of the CDE and CSSD violate Children's Procedural Rights under IDEA for an Individualized Approach to their FAPE?

A state or district policy can violate the IDEA either by failing to comply with its procedural requirements or by failing to comply with its substantive requirements. *Rowley,* 458 U.S. at 206-207.  The McQueens challenge the District ESY policy on procedural grounds, arguing that by limiting the content and goals of ESY programs only to retain already acquired skills, the policy violates the procedural right of disabled children to an individualized assessment of their ESY needs, and denies them FAPE under the IDEA. The McQueens contend, and the District does not dispute, that the IDEA requires states to provide an IEP based on each student's individual needs. The FAPE required under the IDEA must be "tailored to the unique needs" of each disabled child. *Rowley,* 458 U.S. at 181. Indeed, "The individualization requirement is of paramount importance in the Act." *Johnson v. Independent School District No. 4,* 921 F.2d 1022, 1027 (10th Cir. 1991).

The District does not deny that its ESY policy prohibits setting goals other than retention of already acquired skills. Nor does the District dispute that this policy applies to children regardless of their individual needs. Moreover, the District policy is based on CDE's ESY guidelines. As Amicus CDE points out, this challenge is therefore not only a challenge to the policies of the District, but also to the CDE ESY guidelines.  The McQueens argue that the District ESY policy violates the IDEA because it restricts the goals of the ESY only to

6

maintaining and retaining skills already acquired during the normal school year, without any individual assessment of the needs of each child.

Neither the McQueens nor the District identify any federal regulation or case law that specifically governs the content of an ESY. The McQueens argue that a series of cases have established that categorical rules of any kind are anathema to the individualization requirement of the IDEA. Courts have stricken as incompatible with the IDEA school district policies that categorically bar consideration of Applied Behavioral Analysis treatment for autistic children, *Deal v. Hamilton County Bd. of Educ.,* 392 F.3d 840, 859 (6th Cir. 2004), that refuse to consider direct physical therapy programs, *Polk v. Central Susquehanna Intermediate Unit 16,* 853 F.2d 171, 176-177 (3d Cir. 1988), and that limit the duration of special education to 180 days a year. *Battle v. Com. of Pa.,* 629 F.2d 269, 280 (3d Cir. 1980). Even though none of these cases directly address ESY services, the McQueens contend that these cases establish that all blanket restrictions violate the IDEA's individualization requirement and, thus, the District's ESY policy also violates the IDEA.

The McQueens also assert that the Tenth Circuit in *Johnson* held that a school district may not limit ESY services only to students who are likely to regress over the summer and who face long recoupment time in the fall. *Johnson,* 921 F.2d at 1027. *Johnson* considered the criteria that govern a school district's decision to provide ESY services. The McQueens argue that *Johnson* concluded that a narrow focus on the student's likelihood of regression and prospects for recoupment (the "regression-recoupment" model) must be supplemented by other factors, including the degree of impairment, the ability of the child's parents to provide educational structure at home, the child's rate of progress, the child's behavioral and physical problems, the

7

availability of alternative resources, the ability of the child to interact with non-disabled children, the areas of the child's curriculum which need continuous attention, and the child's vocational needs. *Id.* While *Johnson* addressed <u>when</u> ESY services are needed (an issue not in dispute here since Joshua had an ESY) rather than the <u>content</u> of ESY services, the McQueens contend that since these other factors must be considered to determine if ESY services are necessary, it is logical that ESY services must also address these additional concerns and cannot be limited solely to regression-recoupment.

The District makes two basic arguments for why its policy comports with the IDEA. First, federal IDEA regulations state that ESY programs can not be limited based on the "type, amount or duration" of services. 34 C.F.R. § 300.309(a)(3)(ii). The District argues, and the IHO and ALJ agreed, that its restriction on teaching new skills is a limit on the <u>goal</u> of ESY services, not the type, amount or duration of services, and is thus not prohibited.

The District also argues that the case law of several circuits, including the Tenth Circuit in *Johnson*, supports its ESY policy. Numerous Circuit Courts of Appeal have upheld school district policies using variations of the significant jeopardy/regression recoupment standard ("significant jeopardy standard"), including the Fourth Circuit, *MM v School District* of *Greenville County*, 303 F.3d 523, 537-538 (4th Cir. 2002), the Sixth Circuit, *Cordrey v. Euckert*, 917 F.2d 1460, 1473 (6th Cir. 1990) and the Fifth Circuit, *Alamo Heights Independent School District v. State Board of Education,* 790 F.2d 1153, 1158 (5th Cir. 1986). There is little question that the significant jeopardy standard applies in jurisdictions throughout the country as a basis for determining <u>when</u> ESY services are needed, without violating the IDEA.

In the Tenth Circuit, the District contends, contrary to the McQueens, *Johnson* supports its ESY policy. *Johnson* analyzed an Oklahoma significant jeopardy standard and concluded that significant jeopardy may be assessed using both past evidence of regression and predictive data and information. *Johnson,* 921 F.2d at 1028. The District argues that the various factors cited by the McQueens are not independent criteria for ESY eligibility but factors to be used in a regression - recoupment analysis. *Id.  Johnson,* under this analysis, supports the District's policy limiting the availability, or in this case the scope, of ESY services to address regression and recoupment.

The United States Department of Education, ("DOE"), in its 1999 Summary and Response to Comments accompanying its Final Rulemaking on the IDEA, specifically cited *Johnson* and other cases as supporting the proposition that states may use the significant jeopardy standard to determine when ESY services are necessary. *Assistance to States for the Education of Children with Disabilities and the Early Intervention Program for Infants and Toddlers with Disabilities, Attachment 1 – Analysis of Comments and Changes,* 64 Fed. Reg. 12,406, 12,576 (March 12, 1999). The DOE endorses standards such as "likelihood of regression, slow-recoupment, and predictive data based on the opinion of professionals" as "derived from well-established judicial precedents and have formed the basis for many standards that State have used" in setting ESY eligibility criteria. *Id.*  I consider this opinion by the federal agency responsible for IDEA compliance, published in the Federal Register, to be a definitive statement that the significant jeopardy standard for determining when to provide ESY services comports with the IDEA.

The District argues that policies valid for establishing the availability of ESY services apply also to establishing the content of ESY services. If ESY services are necessary only when a student faces the risk of regression, then it is logical that ESY programs may be limited to the services needed to prevent regression. Indeed, the one circuit that addressed the content of an ESY program reached this precise conclusion. In *JH ex Rel JD v. Henrico County School Bd.,* the Fourth Circuit, without much explanation, expanded its own circuit's significant jeopardy standard from a threshold for providing ESY services to the basis for determining the content of ESY services. 326 F.3d 560, 567 (4th Cir. 2003). The District argues that this same analytic step is appropriate here.

I agree. This position is supported by the IDEA's strong deference to state discretion in formulating the most appropriate education policy. *Rowley,* 458 U.S. at 207-208. Additionally, the DOE's Office of Special Education Programs (OSEP) has issued several memoranda and interpretive letters to states endorsing the significant jeopardy standard as the basis for the content as well as the trigger of ESY services. *See for example, Letter to Myers,* 16 IDELR 290 (OSEP 1989)("[T]he purpose of the ESY program is to prevent regression and recoupment problems.") While these kinds of agency interpretive memoranda do not have the force of law, they "are entitled to respect" to the extent that they are persuasive. *See Christensen v. Harris County,* 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000).

I conclude the District does not violate the IDEA when it limits ESY goals to those necessary to prevent skills or benefits already accrued from the prior year from facing significant jeopardy due to regression or lack of retention. This limit on the goals of an ESY, even applied categorically, does not violate the IDEA.

The McQueens also make a second challenge to the District ESY policy. They contend that this policy goes beyond limiting the goals of an ESY to retention of existing skills, but actually prohibits the teaching of new skills even when this may be a necessary step towards the purpose of retaining existing skills. This is an important distinction, since the IHO heard "relevant and credible testimony" from Gerenser that for some children, including severely autistic children, teaching new skills may be necessary for <u>retaining</u> existing skills.  Gerenser described situations where a child must learn new skills in order to embed already acquired skills. According to the McQueens, the District policy bars teaching new skills even in this scenario, and thus potentially undercuts its own stated goal of avoiding significant jeopardy.

The flaw in this argument is that the District policy does not appear to raise this specter. In response to my questions, the lawyer for the District stated explicitly during oral argument that the District policy in no way prevents a student from receiving additional skills training if the IEP committee determines that this is necessary in order to meet an ESY skills-maintenance goal. The McQueens point to the hearing record and language in the District policy that suggest otherwise. However, after careful review of the record, and in light of counsel's binding admission, I cannot conclude that the District policy is or does what the McQueens suggest. That is to say, the District policy does not facially prohibit a student from receiving additional skills training if and when the IEP committee determines that this is necessary to meet ESY skills-maintenance goals. While the McQueens contend that the District was "back-peddling" during the oral argument, I believe that the record below is ambiguous on this point, and I accept that counsel's statements on the record before me represent the policy and practice of the School District.

Therefore, it is so ordered that,

1) The decision of the ALJ upholding the District's and the State's ESY policy limiting the goals of an ESY program to retaining skills already acquired in the prior school year is AFFIRMED.

**DONE and ORDERED,** this ___8th___ day of March, 2006 at Denver, Colorado.

                                                                             s/Lewis T. Babcock
                                                          United States District Chief Judge